## In re Coyt C. SHIRLEY, t/a Allied Construction, Debtor.

### Bankruptcy No. 5–84–00278.

United States Bankruptcy Court,
W.D. Virginia,
Harrisonburg Division.

May 24, 1991.

Roy V. Wolfe, III, Harrisonburg, Va., for trustee.

Robert M. Musselman, Charlottesville, Va., for debtor.

### MEMORANDUM

ROSS W. KRUMM, Bankruptcy Judge.

The matter for decision before the court involves the priority of the debtor's homestead exemption over a third lien deed of trust placed on the debtor's property pursuant to the plan confirmed in his chapter 11 case prior to conversion to Chapter 7.

### Facts

The debtor filed his homestead deed on August 3, 1984, and claimed as exempt $5,000 of equity in certain real estate located in Augusta County (hereinafter the Sherando Property). The debtor then filed his petition under Chapter 11 on August 17, 1984. At the time the petition was filed, there existed only one lien against the Sherando Property, the McClure deed of trust.

During the pendency of the Chapter 11, real property known as the Schooner Property was sold and the proceeds were used to partially satisfy a lien on it. The balance of the indebtedness on the Schooner Property was secured by a deed of trust on the Sherando Property (hereinafter re-

---

ferred to as the Fauber deed of trust). Pursuant to an order dated March 5, 1986, and in furtherance of the debtor's confirmed plan of reorganization, the McClure deed of trust was subordinated to the Fauber deed of trust. Also, pursuant to the confirmed plan, the debtor executed a third lien deed of trust against the Sherando Property in favor of the plan's Class 9 creditors. Subsequently, on April 29, 1987, before any payments were made to Class 9 creditors under the plan, the debtor's case was converted to one under Chapter 7. After conversion, the third lien deed of trust and the obligation secured by it were assigned to the Chapter 7 trustee. Trustee's Exhibit H.

Pursuant to an order of sale and confirmation of same, the trustee sold the Sherando Property and the proceeds were impressed with existing liens in order of priority. The trustee then filed a motion for distribution of the sales proceeds. At a hearing on December 19, 1990, in Staunton, Virginia, the debtor appeared *pro se* and objected to the motion for distribution on the ground that there was no proposed distribution to him on account of his homestead exemption. The trustee stated that there were not sufficient proceeds from the sale of the Property to satisfy the third lien deed of trust and the homestead exemption and took the position that the third lien has priority over the exemption. The court ruled that the debtor was to file his objection to the distribution through counsel and a continued hearing was set. At the continued hearing on February 20, 1991, the court requested debtor's counsel to file a brief in support of his position, to which the trustee could file a reply brief, and set a date for oral argument on the objection to distribution. Oral argument by both parties was heard on April 17, 1991.

Counsel for the debtor argues that since the debtor's homestead deed was filed prior to the execution of the third lien deed of trust, the debtor is entitled to payment of his homestead exemption prior to distribution of funds to the third lienholders. The trustee argues that the debtor, by creating the third lien deed of trust, waived his exemption to the extent proceeds are necessary to satisfy the third lien.

*Law*

Pursuant to Code of Virginia § 55–96, a recorded deed takes priority over any subsequently-recorded instrument on the same property. The debtor is correct that this section states the "first in time, first in right" doctrine. Additionally, debtor is correct that the exemption to which he is entitled is that as allowed at the time of filing of his petition under Chapter 11, and not at the time of conversion to Chapter 7. See 11 U.S.C. § 348(a). 11 U.S.C. § 541(a) provides that the filing of a petition creates an estate and describes the property which comprises the estate. Section 522(b) provides for a debtor to exempt certain property from the estate. Virginia has opted out of the federal exemptions through Code of Virginia § 34–3.1, allowing Virginia debtors only the exemptions specified at section 34–4 et seq. Section 34–4 applicable to this case allows a householder or debtor a homestead exemption in property of a value up to $5,000. In the present case, the debtor's homestead deed is valid pursuant to the Bankruptcy Code and the homestead exemption laws of Virginia, and his exemption of $5,000 in the Sherando Property is of record.

However, the trustee argues that the debtor waived his exemption upon execution of the third deed of trust against the Sherando Property. The Court in *White v. Owen*, 71 Va. (30 Gratt.) 43 (1878), was faced with the issue to be decided here: whether property which has been set aside by homestead deed, duly recorded, is subject to payment of the debtor's debts by way of a subsequent deed of trust. The Court answered the question in the affirmative after looking to Article XI of the Constitution of Virginia. The Court, in its examination of the framers' intent in the constitution and the homestead exemption law, stated that

[W]hilst it plainly appears that it was their [framers'] purpose to enable the householder or head of a family to set apart and hold such portion of his property as does not exceed $2,000 [now $5,000]

in value, exempt from execution or other legal process, if there is no language employed conveying the idea that it should be so held by him as to be thereafter exempt from sale or incumbrance by his own act, we cannot assume that such was the intention of the framers of the constitution.

71 Va. at 46.

The Court in *Linkenhoker's Heirs v. Detrick*, 81 Va. 44 (1885), was faced with a similar issue. The Court cited to the case of *In re Solomon*, 2 Hughes' R. 164, for the holding that nothing in the Virginia constitution interferes with a person's right to sell property; therefore, a person is not required to hold it absolutely once property is exempted under the homestead statute. *Linkenhoker*, 81 Va. at 53. The Court also stated that "it is plain that there is in none of these provisions, nor in all combined, any express prohibition of a waiver of the homestead exemption by a householder or head of a family, or any interdiction of the powers of the legislature to provide for such a waiver, or the mode in which it may be exercised." (Emphasis in original.) 81 Va. at 54, citing *Reed v. Union Bank of Winchester*, 29 Gratt. 719. The *Linkenhoker* court then cited to the opinion of *White v. Owen*, supra, and held as follows:

> [I]t is manifest that the real intention of the framers of the constitution was, as we have before shown, to confer upon the householder or head of a family a personal privilege, of which he might avail himself or not, as his views of the interests of himself or his family might dictate; and that they, realizing that whilst it might often be expedient for the householder to set up his claim to this exemption, it might not always be for the benefit of either himself or family to retain it as a homestead; wisely so framed the provision as to prevent his being deprived of the exemption by the various processes of the law, whilst at the same time it left in the householder the absolute right of disposing of it which he enjoyed before the property was set apart ...
>
> [T]he effect of the provision is to allow the householder to select and set apart

and hold as homestead certain property so long as, in his discretion, it may be for the benefit of himself and family, and when, in his opinion, it is more for their benefit to do so, to dispose of it. A provision permitting a householder to hold as exempt certain property so long as it may be for the benefit of himself and family is perfectly consistent with one which permits him to retain the right to make sale of the same property when it shall be for the benefit of the family for him to do so....

81 Va. at 56–57.

Accordingly, the law in Virginia is that a person who has claimed property as exempt pursuant to the homestead statute may subsequently waive such exemption by later deed of trust, sale, or other disposition of the property. In this case, the debtor's Chapter 11 plan provided class 9 creditors with a third lien on the Sherando Property. There is no language in the plan that states or infers that the claims of class 9 creditors are subordinate to the homestead exemption of the debtor. The language of the third deed of trust provides specifically that it is subordinate only to the first lien deed of trust (Fauber deed of trust) and the second lien deed of trust (McClure deed of trust). No mention is made of subordination of the third deed of trust to the debtor's previously-recorded homestead exemption. The debtor is bound by the terms of his plan and the document implementing the plan.

Debtor cites no authority to call into question or overrule the case law supporting the trustee's position. The debtor cannot point to any language in the lien deed of trust or elsewhere to overcome the specific subordination language in the deed of trust. If the debtor had intended anything other than a waiver of his homestead with respect to the third lien deed of trust, it would have been in the plan and the deed of trust. Accordingly, the court finds that Shirley properly perfected his homestead claim of $5,000 in the Sherando Property but that the exemption was waived by him upon confirmation of the plan and execution of the third lien deed of trust in favor

of the Class 9 creditors. The trustee shall distribute the remaining proceeds of sale held by him first to the third deed of trust lienholders and any remaining funds will then be distributed to the debtor on account of his homestead exemption.